# 98 DTA 160

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL IV DE MAYAGÜEZ Y AGUADILLA**

MILTON PAGAN VILLALOBOS
Apelante

v.

F. BACO, SORIA & HNOS., INC. Y FARMACIAS BACO, INC.

Apelados

Núm. KLAN-96-00243

San Juan, Puerto Rico, a 25 de marzo de 1998

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Colón Birriel y la Juez Feliciano Acevedo

Feliciano Acevedo, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Señor Milton Pagán Villalobos, apela de una sentencia dictada en su contra por el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Mayaguez (Honorable Juez Manuel A. Acevedo Hernández). Mediante dicha sentencia se declaró sin lugar una demanda presentada por el apelante. Se nos solicita que revoquemos la sentencia y declaremos con lugar la demanda incoada.

Por los fundamentos expuestos a continuación, confirmamos la sentencia dictada por el Tribunal de Primera Instancia.

### I

El presente caso envuelve una querella presentada por el Sr. Milton Pagán Villalobos. Este se acogió a las disposiciones de la Ley Núm. 80 del 30 de mayo de 1976, 29 L.P.R.A. sec. 185 *et seq.* por vía del procedimiento sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3118, según enmendada, y radicó una demanda contra F. Bacó Soria & Hnos. y Farmacias Bacó, (co-demandadas).

Alegó, esencialmente, que había sido despedido sin justa causa y por discrimen por razón de edad. Por el contrario, las co-demandadas alegaron que el apelante había abandonado el empleo voluntariamente para ir a trabajar a otra empresa. Entre otras cosas, mencionaron que el señor Pagán incumplió con algunas normas de las empresas, pero que su despido se fundamentó únicamente en el abandono voluntario.

Luego de varios trámites procesales, la vista se vio en su fondo y el juez de primera instancia estimó probados, entre otros, los siguientes hechos:

*"El demandante, Milton Pagán Villalobos, comenzó a trabajar para las co-demandadas el 12 de junio de 1950, como tenedor de libros de las empresas... El martes, 4 de septiembre de 1990, la señora Bacó, esposa del señor Luis E. Bacó, después de las doce del medio día apagó el aire acondicionado de las facilidades. La codemandada F. Bacó Soria & Hnos., Inc., había circulado un memo señalando la necesidad de cerrar la empresa durante la hora de almuerzo para que todos los empleados pudieran disfrutar de la hora que les concede la ley.*

*Ese día el demandante se encontraba trabajando en su escritorio y se molestó, ya que, según su propia declaración, antes podía quedarse a trabajar al mediodía sin ningún problema. Declaró que no le informó su incomodidad a la señora Bacó ni al Sr. Luis Bacó. El demandante declaró que su interpretación de tal acción por parte de la empresa era para atrasar su trabajo."*

Al día siguiente, fue a trabajar y el señor Bacó no le dijo nada. El demandante declaró que éste le pasó cinco veces por el lado y no le mencionó nada. La indiferencia del señor Bacó hacia el demandante hizo que éste se sintiera mal y se retirara a su casa. Ese día, antes de retirarse a su casa el demandante escribió una nota dirigida al señor Bacó, (Exhibit 1 por estipulación de las partes) que leía en lo pertinente de la siguiente forma:

*"Ante la indiferencia de un gran profesional, como es usted, mi presión ha subido bastante, por lo que he resuelto retirarme a mí hogar para descansar unos días.*

*(Está autorizado para que me rebajen estos días que falte).*

*Si Dios lo permite pienso regresar el sábado, para si es posible tener una reunión, junto con el Sr. Joe Bacó, cosa que si me obligan a presentar mi renuncia, los dos sean testigos, y no vayan a decir a mis espaldas "que Pagán fue esto y fue aquello". Favor recordar el ejemplo de Juan Aníbal Pardo.*

*Tenía planeado ayudarlos medio día, hasta el fin de mi vida... pero con estos procedimientos de niño veo que es imposible.*

*Un gran JEFE que le pase por el lado a su empleado FIEL Y HONRADO de casi 41 años de servicio constante a la compañía, y ni siquiera le de un saludo, es indice de que ya "apesta" y lo que desean es que se largue.*

*Que Dios me ayude.*
*Milton E. Pagán"*

Dicha nota informa que regresaría el sábado (8 de septiembre de 1990) para tener una reunión. Los señores Bacó y Joe Ramos esperaron al demandante para sostener la reunión, pero éste no se presentó. Tampoco se comunicó para notificar lo que había sucedido o que no asistiría a la reunión.

El señor Pagán declaró que el viernes 7 de septiembre, sintió un dolor en el vientre y acudió a ver al Dr. José A. Acosta Gregory... El Dr. Acosta aclaró que el descanso ordenado no le impedía al paciente caminar, salir de la casa, llamar por teléfono o llevar a cabo tareas cotidianas.

El demandante nunca notificó a su patrono de su alegada enfermedad... La evidencia admitida y creída por el tribunal demostró que para la fecha en que el demandante trabajaba en la empresa si un empleado se ausentaba debía notificar a la mayor brevedad posible la razón de la ausencia y si la misma se prolongaba por más de dos días, luego de cumplir con el requisito de notificación, el empleado debía presentar un certificado médico.

El 14 de septiembre de 1990, el señor Bacó (luego de infructuosos intentos de comunicarse con el señor Pagán), le escribe una carta al demandante, informándole que debido al abandono del trabajo, habiendo transcurrido diez días sin haberse comunicado con la empresa y que estaba trabajando como administrador de los Teatros Wometco, las co-demandadas interpretaban dicha conducta como una renuncia a su empleo. En dicha misiva se le envió una bonificación de $5,000.00 en agradecimiento por sus años de servicio.

El día en que el demandante recibió la carta, por su parte escribió una carta al señor Bacó. En dicha carta, contemporánea a los hechos que dan base a la presente reclamación, hay unas admisiones muy reveladoras por parte del demandante que demuestra claramente que éste renunció voluntariamente el empleo con las co-demandadas:

*"Me había quedado varias tardes, adelantado el trabajo.*

*Cuando ese martes, (ya había ordenado mi sandwich y refresco) y le dije a tu esposa que me quedaba, ella me dijo, que por órdenes tuyas, nadie se podía quedar. Luego que me dijeron esto, me pusieron en el escritorio una carta que tú habías escrito en esos momentos.*

*Iba dirigida a los empleados de oficina. Yo nunca he sido empleado de oficina... era su hermano, su mano derecha, su hombre de confianza. Parece que fallé en esta interpretación.*

*Cuando esto sucedía, y para que veas cómo es DIOS, éste me dijo... "esta es la señal que esperabas...vete y no vuelvas".*

El propio demandante admitió en su declaración que el día que se retiró a su hogar no fue al médico y nunca se comunicó con las empresas durante su ausencia. Luego de recibir la carta que indicaba su abandono de empleo no solicitó que le repusieran y tampoco solicitó una reunión para discutir las razones para tan prolongada ausencia.

No podemos dar crédito a la alegación del demandante de que unas supuestas irregularidades que estaban ocurriendo en las empresas fueron la base de su despido...nunca señaló a los demás accionistas su preocupación por la administración de la empresa... Después de abandonar el empleo es que por primera vez señala su preocupación por alegadas irregularidades.

Desde julio de 1990, el demandante, según su testimonio y el de la Sra. Silvia Valentín Cuevas, Asistente de Gerente de los Teatros Wometco del Mayaguez Mall, empezó a trabajar en los teatros, aunque no estaba en nómina ni recibía remuneración económica de parte de dicha empresa.

La Sra. Silvia Valentín Cuevas, declaró además, que el primer cheque de salario que recibió el demandante de parte de los Teatros Wometco fue el día 21 de septiembre de 1990 por la cantidad de $180.92. En contrainterrogatorio declaró que para haber recibido dicho cheque en tal fecha y por esa cantidad el demandante tuvo que haber estado trabajando en nómina desde el día 14 de septiembre de 1990. Declaró que en los teatros se pagaba semanal y que la cantidad de $180.92 reflejaba el pago de un salario de una semana para un empleado a tiempo completo. Es importante notar que la carta en que las empresas co-demandadas le notifican que su ausencia por más de diez días se considera como una renuncia, tiene fecha del 14 de septiembre de 1990, y no fue hasta el día 19 de septiembre de 1990, que el demandante recibió la misma. Es decir que el demandante ya estaba trabajando en los teatros, a tiempo completo y recibiendo salario, desde antes que recibiera la comunicación en la cual los co-demandados le notificaron que ya no era empleado.

Luego del abandono del empleo del demandante los co-demandados utilizaron personas de la misma empresa para llevar a cabo las tareas que realizaba el demandante y finalmente se empleó a una persona de igual edad que éste para ocupar la posición.

Durante la vista, el demandante declaró que el contenido de las cartas, citadas por el juez, era correcto.

El Tribunal de Primera Instancia, dictó sentencia el día 5 de junio de 1995. En la misma, declaró sin lugar la demanda contra las demandadas, por entender que el despido del señor Pagán fue uno justificado. Añadió, que la actuación del señor Pagán, a la luz de los hechos probados, constituyó abandono de sus labores. Concluyó que, primeramente el abandono fue motivado por una alegada condición de presión alta, pero del texto de la nota (Exhibit 1 por estipulación de las partes), acusaba una razón puramente emocional. La conducta desplegada durante los días posteriores al abandono, no demostró la buena fe que debe existir, como una de las obligaciones fundamentales de todo trabajador. *Arthur Young & Co., v. Vega,* __ D.P.R. __ (1994) **94 J.T.S. 75,** 11968. Finalmente expresó que la parte demandada cumplió con la obligación que le impone la ley y la jurisprudencia de demostrar que el despido del señor Pagán fue uno justificado. Coincidimos con el Tribunal de Primera Instancia.

## II

El apelante sostiene que el Tribunal de Primera Instancia cometió los siguientes errores:

Errores sobre los fundamentos de la sentencia que justifican el despido del apelante

*"A. Erró el Tribunal de Instancia en su sentencia, tanto en derecho como en la apreciación de la prueba, al determinar que el apelante abandonó el trabajo, cuando el apelante meramente disfrutaba de una licencia por razón de enfermedad por el tiempo y bajo las condiciones establecidas tanto en los acuerdos concordados con la gerencia de las empresas apeladas como en el Decreto Mandatorio Núm. 68 (cuarta revisión 1989) aplicable a la industria de comercio al por mayor el cual contenía las normas sobre ausencias por enfermedad aplicables a las empresas apeladas, y cuyas normas el apelante satisfizo.*

*B. Erró el Tribunal de Instancia en su sentencia, tanto en derecho como en la apreciación de la prueba, al concluir que la ausencia por razón de enfermedad del apelante era suficiente, como cuestión de derecho, para justificar su despido en su primera falta en cuarenta (40) años de servicio abnegado y sacrificado.*

*C. Erró el Tribunal de Instancia en su sentencia, tanto en derecho como en la apreciación de la prueba, al concluir que el despido del apelante fue justificado, por éste estar negociando con una empresa de cines para trabajar en su segundo empleo durante su tiempo libre, cuando de un análisis imparcial de la totalidad de la prueba vertida se desprende que: (1) el cine es la diversión favorita del apelante, lo cual le ayuda a su condición de hipertensión, (2) el apelante y los apelados habían acordado previamente que el apelante trabajaría sólo medio día, por lo que el resto del día podía ser dedicado a un segundo empleo, (3) no había conflicto alguno entre los dos trabajos, y (4) su despido por esta razón constituye un perjuicio al derecho constitucional al trabajo del apelante.*

*D. Erró el Tribunal de Instancia al negarse a conceder la moción del apelante para que se decretara a su favor la responsabilidad civil de los apelados durante el juicio luego de finalizada la prueba de éstos, al igual que en su sentencia, al determinar que el despido del apelante fue uno justificado y de acuerdo con el supuesto reglamento interno de su patrono, cuando el reglamento aludido por el Tribunal de Instancia en su sentencia tuvo vigencia desde el 1992 y el apelante había sido despedido dos años antes en el 1990, al igual porque los apelados nunca satisfacieron [sic] con prueba admisible los requisitos establecidos en Rivera Aguila v. K-Mart, 89 J.T.S. 42, para despidos por violación a normas internas de trabajo, por lo que la presunción de despido injustificado nunca fue rebatida.*

*E. Erró el Tribunal de Instancia en su sentencia, al negarse a conceder la moción del apelante para que se decretara a su favor la responsabilidad de los apelados, ya que éstos tenían la carga de la prueba y renunciaron a someter prueba al permitirle al apelante someter la suya primero, en abierta contradicción al mecanismo sumario del procedimiento y a la presunción de despido injustificado.*

*F. Erró el Tribunal de Instancia en su sentencia, al no considerar la posibilidad de un despido constructivo."*

Errores relacionados con el fraude del Tribunal

*"G. Erró el Tribunal de Instancia en su sentencia, y al negarse a reconsiderar y/o relevar la misma bajo las reglas 47 y 49.2, por razón de haber fraude al Tribunal, al determinar que el despido del apelante fue uno justificado por el apelante supuestamente haber violado un alegado reglamento interno según lo establecido en Rivera Aguila v. K-Mart, 89 J.T.S. 42, cuando la única prueba presentada por los apelantes y admitida por el Tribunal de Instancia sobre el recibo de reglamento alguno fue un documento sorpresivo consistente en un listado de firmas de empleados con una leyenda al margen, el cual nunca fue autenticado, y el cual fue alterado para dar la apariencia de ser el recibo de un reglamento interno de las empresas.*

*H. Erró el Tribunal de Instancia al negarse a reconsiderar y/o relevar la sentencia por razón del fraude al Tribunal, sin concederle al apelante una vista evidenciaria según lo requiere la jurisprudencia."*

Errores en torno a las verdaderas razones para el despido del apelante

*"I. Erró el Tribunal de Instancia en su sentencia, al determinar que la edad avanzada del apelante no fuera una razón para el despido injustificado del apelante, cuando se sometió prueba directa de discrimen por razón de edad.*

*J. Erró el Tribunal de Instancia en su sentencia, al determinar que el despido injustificado del apelante no era en represalia por el apelante informarle al ex-presidente de las empresas apeladas que no estaba dispuesto a seguir cayado [sic] en cuanto a sus actos de robo de activos y malversación de fondos de las empresas."*

Errores en la apreciación de la prueba

*"K. Erró el Tribunal de Instancia en su sentencia, ya que su apreciación de los hechos es claramente errónea y contraria a toda la prueba vertida, la cual demostró fehacientemente que el despido del apelante fue uno injustificado, en represalia, por razón de su edad y contrario a las normas del decreto mandatorio aplicable sobre ausencias por razón de enfermedad."*

Errores de índole ético que viciaron el proceso

*"Erró el Tribunal de Instancia en su sentencia, y al negarse a reconsiderar y/o relevar la misma, por razón de que los procedimientos estaban viciados con violaciones por parte de un abogado de un apelado codemandado al canon 21 de ética profesional."*

Antes de entrar en la discusión de los errores, mencionaremos algunos aspectos generales sobre la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185 *et seq*.

### III

La Ley Núm. 80 de 30 de mayo de 1976, *supra*, dispone en lo pertinente lo siguiente:

*"Todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, designado en lo sucesivo como el establecimiento, donde trabaja mediante remuneración de alguna clase contratado sin tiempo determinado, que fuere despedido de su cargo sin que haya mediado justa causa, tendrá derecho a recibir de su patrono en adición al sueldo que hubiese devengado:*

*(a) El sueldo correspondiente a un mes por concepto de indemnización; si el despido ocurre dentro de los primeros cinco (5) años de servicio; el sueldo correspondiente a dos (2) meses si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio; el sueldo correspondiente a tres (3) meses si el despido ocurre luego de los quince (15) años de servicio;*

*(b) una indemnización progresiva, adicional equivalente a una semana por cada año de servicio. 29 L.P.R.A. sec. 185 (a)."*

Como correctamente señaló el foro apelado, el Tribunal Supremo de Puerto Rico ha expresado que la exposición de motivos de la Ley 80, *supra*, es ilustrativa de su propósito reparador y de la intención legislativa de sustituir la derogada Ley Núm. 50 por un estatuto más liberal. *Beauchamp v. Holsum Bakers de Puerto Rico,* 116 D.P.R. 522, 526 (1985).

La indemnización a la cual tiene derecho un empleado, contratado sin tiempo determinado, por parte del patrono que lo despide, aplica solamente cuando el despido de su cargo haya mediado sin justa causa.

La Ley 80 en su sección 185(b) establece una lista de posibles razones justificadas por las cuales un patrono pueda despedir a un empleado. Dichas razones son las siguientes:

*"Se entenderá por justa causa para el despido de un empleado de un establecimiento:*

*(a) Que el obrero siga un patrón de conducta impropia o desordenada.*

*(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.*

*(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado previamente al empleado.*

*(d) Cierre total, temporero o parcial de las operaciones del establecimiento.*

*(e) Los cambios tecnológicos o de reorganización,*

*(f) así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.*

*(g) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.*

*No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento". 29 L.P.R.A. sec. 185 (b)."*

Por tratarse de un estatuto de carácter reparador, su propósito esencial es, proteger al obrero y la ley le impone al patrono el peso de la prueba para establecer que el despido fue uno justificado. 29

217

L.P.R.A., sec. 185(k); *Rubén Báez García v. Cooper Laboratories Inc.*, 120 D.P.R. 145, 152 (1987).

En este último caso citado, el Tribunal Supremo de Puerto Rico al evaluar la relación entre la sección 185 (b) y la sección 185 (k) señaló lo siguiente:

*"...al enumerar las posibles circunstancias, el legislador concretizó unas situaciones que sirvieran de Norte a los tribunales en los casos en que se invocara esta Ley. Aún así, al valorar esta dinámica en una relación típica obrero-patronal, el artículo 8 determinó imponerle a todo patrono la carga probatoria de justificar en la afirmativa su actuación, exponiendo en la contestación a una querella los hechos que dieran origen al despido".* Pág. 152.

Es imperativo entender que la Ley no pretende, ni puede, considerando la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, ser un código de conducta conteniendo una lista de faltas claramente definidas y la sanción que correspondería a cada una de ellas en cada instancia. Sin duda, las sanciones pueden variar desde una mera reprimenda, una suspensión o el despido. Sabido es, que el patrono puede adoptar reglas y reglamentos razonables que estime necesarias para el buen funcionamiento de la empresa. *Secretario del Trabajo v. I.T.T.*, 108 D.P.R. 536, 542 (1979).

Discutiremos de forma global la mayoría de los errores señalados, por entender que los mismos están dirigidos principalmente a la apreciación de la prueba realizada por el Tribunal de Primera Instancia, al decidir que el despido fue uno justificado.

Es norma reiterada y fundamental de nuestro ordenamiento jurídico, que un Tribunal Apelativo no intervendrá con las determinaciones de hechos ni con la adjudicación de la credibilidad que hizo el juzgador de los hechos, salvo que haya mediado prejuicio o error manifiesto de su parte. *Quiñones López v. Manzano Pozas,* 141 D.P.R. __ (1996), **96 J.T.S. 95**, 1305. Dicha norma tiene como base la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2; la cual específicamente dispone que las determinaciones de hechos realizadas por el Tribunal de Primera Instancia no deberán ser alteradas, a menos que se demuestre que las mismas son claramente erróneas o producto de pasión, prejuicio o parcialidad. *Maryland Casualty Co. v. Quick Cont. Co.*, 90 D.P.R. 329, 335-339 (1964).

Las determinaciones del tribunal de origen no deben ser descartadas arbitrariamente ni sustituidas por el criterio del Tribunal de Apelaciones, a menos que carecieran de base suficiente en la prueba presentada. *Mercado v. Hull Dobbs Corp.*, 90 D.P.R. 864, 868 (1964).

Es menester recordar, que la mera existencia de prueba conflictiva no constituye error manifiesto. Por el contrario, reiteradamente el Tribunal Supremo ha resuelto que cuando existe conflicto entre las pruebas, corresponde precisamente al juzgador de los hechos dirimir ese conflicto. *Sanabria v. Sucn. González,* 82 D.P.R. 885, 996997 (1961).

Reconocemos, que aunque el arbitrio del juzgador de hechos es respetable y merece deferencia, no es absoluto, y una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal. *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8, 14 (1987).

Alega el señor Pagán que fue despedido de su empleo; nos preguntamos: ¿abandonó o no abandonó el señor Pagán voluntariamente su trabajo?

El apelante plantea que una de las razones para su despido fue su edad avanzada; en síntesis, plantea que fue discriminado por su edad.

El Tribunal de Primera Instancia dio por establecido que la empresa contrató a una persona de la misma edad del apelante para que ocupara el puesto que éste abandonó. No existe evidencia creíble que nos lleve a concluir que hubo discrimen por razón de edad. Reiteramos que, en ausencia de manifiesto error, no intervendremos con las determinaciones de hechos del foro apelado.

El apelante sostiene, entre otras cosas, que su despido fue un acto de represalia por haber informado al ex-presidente de las empresas demandadas que no estaba dispuesto a seguir callando

actos de robo y malversación de fondos. Con relación a las supuestas actuaciones ilegales del señor Bacó, sostenemos las conclusiones del foro apelado. ¿Por qué al abandonar su trabajo es que menciona por vez primera las supuestas irregularidades o actos ilegales? El Tribunal de Primera Instancia le restó credibilidad al planteamiento del apelante, sencillamente no estaba viendo un juicio contra las empresas, sino determinando cuáles fueron las razones para el despido, si alguno. En cuanto a este aspecto, el tribunal tomó la decisión que, según su criterio, se ajustaba más a la prueba presentada y admitida.

Entre los errores mencionados, el apelante sostiene que erró el Tribunal al negarse a reconsiderar o relevar la sentencia.

La Regla 47 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 47, dispone lo siguiente:

*"La parte adversamente afectada por una resolución, orden o sentencia podrá, dentro de un término de quince (15) días desde la fecha de la notificación de la resolución u orden desde la fecha del archivo en los autos de una copia de la notificación de la sentencia, presentar una moción de reconsideración de la resolución, orden o sentencia. El tribunal dentro de los diez (10) días de haberse presentado dicha moción, deberá considerarla. Si la rechazare de plano, el término para apelar o presentar un recurso de certiorari se considerará como que nunca fue interrumpido. Si se tomare alguna determinación en su consideración, el término para apelar o presentar un recurso de certiorari empezará a contarse desde la fecha en que se archiva en los autos una copia de la notificación de la resolución del tribunal resolviendo definitivamente la moción. Si el tribunal dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los diez (10) días de haber sido presentada, se entenderá que la misma ha sido rechazada de plano.*

*Cuando el término para recurrir de una sentencia fuere interrumpido en virtud de esta regla, la interrupción beneficiará a cualquier otra parte que se hallare en el pleito."*

Reiteradamente el Tribunal Supremo de Puerto Rico ha resuelto que el término de quince días que la regla 47 concede a la parte afectada adversamente para solicitar una Moción de Reconsideración es jurisdiccional.

En el presente caso la sentencia fue dictada el día 15 de junio de 1995 y la copia de la notificación de la misma fue archivada en autos el 16 de junio de 1995. El término para presentar Moción de Reconsideración vencía el 1ro de agosto de 1995. No fue hasta el día 15 de agosto que el apelante presentó su moción ante el Tribunal de Primera Instancia. El tribunal apelado, correctamente, decretó un no ha lugar a la moción presentada.

Por otro lado, la Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 49.2, dispone en lo pertinente lo siguiente:

*"Mediante Moción bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las siguientes razones:*

*(1) Error, inadvertencia, sorpresa o negligencia excusable;*

*(2)...*

*(3) fraude (incluyendo el que hasta ahora se ha denominado intrínseco y también el llamado extrínseco), falsa representación u otra conducta impropia de una parte adversa;*

*(4)...*

*(5)...*

*(6)..."*

Nuestra jurisprudencia ha sido clara al establecer que la regla 49.2 no fue establecida para conceder

remedio contra una sentencia u orden errónea de un tribunal. *Builders Ins. Co. v. Tribunal Superior,* 100 D.P.R. 401, 404 (1961); *González v. Chavez,* 103 D.P.R. 474, 476 (1976).

Está establecido que, *"la Regla 49.2 provee un mecanismo procesal post-sentencia para impedir que tecnicismos y sofisticaciones frustren los fines de la justicia... No obstante, esta regla no es una llave maestra para reabrir a capricho el pleito ya adjudicado y echar a un lado la sentencia correctamente dictada".* Ortiz Serrano v. Ortiz Díaz, 106 D.P.R. 445, 449 (1977); *Ríos v. Tribunal Superior,* 102 D.P.R. 793, 794 (1974).

Las alegaciones de fraude al Tribunal deben exponerse detalladamente y con fundamentos válidos. *Figueroa v. Banco de San Juan,* 108 D.P.R. 680, 690-691 (1979).

Las alegaciones que a este respecto hace el apelante, no nos convencen. Es menester recordar que las sentencias dictadas por nuestros tribunales tienen a su favor una presunción de validez y corrección. *Cortés Piñero v. Sucesión A. Cortés,* 83 D.P.R. 685, 690 (1961).

El apelante cita casos que disponen que el relevo de una sentencia descansa en la sana discreción judicial y que se debe celebrar una vista evidenciaria, cuando resulte imprescindible el que las partes sean oídas antes de disponer de la moción. *Martínez v. Tribunal Superior,* 83 D.P.R. 358, 362, 363 (1961); *Roca v. Thompson,* 77 D.P.R. 419, 430 (1954). En cuanto a este aspecto, somos de la opinión que no procedía la celebración de una vista evidenciaria.

El Tribunal de Primera Instancia no consideró el Reglamento Interno de las empresas que, según el apelante, fue alterado al incluírsele una leyenda al margen derecho que lee de la siguiente forma: *"Recibí, fui orientado y acepto lo estipulado en este Reglamento, en conformidad.",* por lo que alegadamente hubo fraude al Tribunal.

Entendemos, que aun cuando se menciona dicho Reglamento en la sentencia, no es a base de éste que el Juez tomó su decisión.

Debemos recordar que la única razón por la cual el Tribunal de Primera Instancia decretó que el despido del señor Pagán, si alguno, había sido uno justificado, fue por considerar que este último abandonó su trabajo voluntariamente. Es evidente que en el presente caso, no se trata de una situación de incumplimiento de normas de trabajo, sino de circunstancias y hechos que demostraron que el apelante abandonó su trabajo.

## IV
El apelante nos señala que siendo ésta su primera falta en casi cuarenta años de servicio (por estar enfermo), no constituia justa causa para su despido.

Sabemos que en nuestra jurisdicción no se favorece el despido como sanción cuando se comete la primera falta. Sin embargo, en *Secretario del Trabajo v. I.T.T., supra,* a la pág. 543, se dijo lo siguiente con relación a un despido cuando se comete la primera falta:

*"...el citado estatuto no excluye de la sanción o despido en primera o única ofensa aquella falta cuya intensidad de agravio así lo requiera en protección de la buena marcha de la empresa y la seguridad de las personas que allí laboran."*

En adición a lo anterior el Tribunal expresó:

*"...de manera indirecta la Ley admite la extrema sanción de despido aun en casos de falta única para la ofensa aislada de todo concepto de reiteración o curso de conducta, ni dentro de las circunstancias en que se impone, dicho castigo de separación del empleo, no refleja arbitrariedad o capricho del patrono".* Supra, pág. 543.

Estamos conscientes del interés prevaleciente de proteger los derechos de los trabajadores, sobre los intereses de los patronos. Sin embargo, corresponde a los Tribunales determinar, después de considerar los hechos y circunstancias particulares de cada caso, si el despido de un obrero estuvo.

justificado o si fue caprichoso. *Mercado v. Hull Dobbs Corp.*, 90 D.P.R. 864, 868 (1964).

La prueba demostró que aun cuando el señor Pagán se encontraba enfermo, no estaba impedido de caminar, llamar por teléfono o llevar a cabo tareas cotidianas. El Tribunal determinó que las razones que motivaron que el apelante abandonara su trabajo fueron puramente emocionales. El Tribunal apelado concluyó que la labor que realizaba el señor Pagán era una muy importante para que la empresa pudiera seguir funcionando. (Sentencia de 5 de junio de 1995, pág. 13). Ante dicha situación, la empresa tenía el derecho como corporación, de tomar las medidas necesarias para procurar que sus operaciones no se vieran afectadas por la ausencia inexplicada y prolongada de su tenedor de libros.

En adición, el apelante sostiene que su despido puede o debe ser considerado como uno constructivo.

El Artículo 5 de la Ley 80, *supra*, define despido de la siguiente forma:

*"A los efectos de las secciones 185 (a) a 185 (i) de este título se entenderá por despido, además de la cesantía del empleado, su suspensión indefinida o por un término que exceda de tres (3) meses, excepto en el caso de empleados de industria y negocios estacionales o la renuncia del empleado motivada por actuaciones del patrono dirigidas a inducirlo a forzarlo a renunciar tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra."*

El Tribunal de Primera Instancia determinó que el señor Pagán abandonó voluntariamente su empleo y le restó credibilidad a la posibilidad de que hubiese sido sometido a humillaciones o vejámenes. Luego de un estudio exhaustivo del expediente, no encontramos nada que contradiga tan lógicas conclusiones.

Con relación al planteamiento de consideraciones éticas, estimamos que el mismo es inmeritorio. Del mismo modo, el planteamiento de que hubo error en el orden de presentación de la prueba, también nos parece inmeritorio.

Finalmente, el apelante reiteradamente plantea que no se aplicaron los requisitos establecidos en el caso *Rivera Aguila v. K-Mart*, 123 D.P.R. 599, 613-614 (1989), al presente caso. Dichos requisitos son los siguientes: *"El patrono tiene que probar, (a) la razonabilidad de las normas establecidas para el funcionamiento del establecimiento; (b) que le suministró una copia escrita de éstas al empleado y; (c) que el empleado las violó en reiteradas ocasiones".* Art. 2 de la Ley Núm. 80, *supra*; *Secretario del Trabajo v. I.T.T., supra*, a la pág. 542.

Los apelados no tenían que probar que se cumplieron los requisitos del citado caso. Esto es así, debido a que la causa esencial para el despido fue el abandono y no la violación de normas o reglamentos de la empresa. (Véase contestación a la demanda, de 6 de octubre de 1993).

Coincidimos con el foro apelado. A tenor con la prueba vertida durante el juicio, admitida y creída, se demostró claramente que el señor Pagán abandonó su trabajo. La actuación del patrono no fue caprichosa y estaba relacionada con el buen funcionamiento de la empresa.

Concluimos que la prueba demostró claramente que el señor Pagán abandonó su empleo sin dar más razones que una carta que reflejaba un estado puramente emocional; que el patrono trató de comunicarse con el apelante sin éxito alguno; que luego de transcurridos diez (10) días, las apeladas le notificaron por escrito su despido y, finalmente, quedó demostrado que el apelante estaba trabajando para otra empresa desde antes de su despido.

A través de todo el expediente, no encontramos ni una sola instancia que demuestre que el foro de instancia haya cometido manifiesto error al aquilatar la prueba desfilada, mucho menos que haya actuado con pasión, prejuicio o parcialidad.

# V

Por los fundamentos expuestos anteriormente, confirmamos la sentencia emitida por el Tribunal de

Primera Instancia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General